UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINGVISION PAY-PER-VIEW CORP., LTD., <br><br>    Plaintiff(s), <br><br>    v. <br><br>BERNARD WILLIAMS, individually and dba AVENUE CLUB, <br><br>    Defendant(s). | No. C 04-2504 BZ <br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

Plaintiff Kingvision Pay-Per-View Corp., Ltd. has applied for entry of default judgment against defendant Bernard Williams, individually and doing business as the Avenue Club. Defendant has not filed any opposition to plaintiff's motion and has not been in contact with the court since default was entered against him on February 14, 2006.  Prior to the default, all parties consented on the record before the Honorable Jeffrey S. White to the jurisdiction of a United

1

States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c).

Plaintiff, the exclusive licensor of rights to exhibit certain closed-circuit and pay-per-view sports programming, brought suit against defendant for unlawfully intercepting and exhibiting the John Ruiz v. Roy Jones, Jr. championship boxing match in his bar, the Avenue Club.  Plaintiff's complaint alleges that defendant is liable under the Communications Act, 47 U.S.C. §§ 553 and 605, for receiving, intercepting, and assisting in the receipt or interception of licensed programming.  Compl. ¶¶ 20, 27.  Plaintiff's hired private investigator was present in defendant's bar on the evening of the fight, March 1, 2003, and observed the Ruiz v. Jones fight being broadcast to approximately forty patrons.  See Ex. B, Aff. of Rafael Cabrera.

Plaintiff filed a complaint against defendant on June 23, 2004.  On July 9, 2004, plaintiff effected service of process on defendant by personal delivery of the summons, complaint, and other relevant documents.  Defendant failed to timely answer the complaint or otherwise defend the action.  On August 13, 2004, upon plaintiff's request, the Clerk of this court entered defendant's default under Rule 55(a).  Defendant subsequently answered the complaint and filed a Motion to Set Aside Default.  Because defendant was *pro se* at the time of the default and did not understand his obligations to respond to the complaint, but had retained counsel in order to file the Motion to Set Aside Default, the Honorable Jeffrey S.

White granted defendant's motion.  On June 21, 2005 the case was reassigned to me for all further proceedings.

At the December 6, 2005 discovery conference, plaintiff apprised the court that defendant had not yet responded to discovery.[1]  Defendant's counsel responded that he was experiencing difficulty communicating with his client and intended to move to withdraw as counsel for defendant. Defendant's counsel subsequently filed a Motion to Withdraw, which the court heard on January 4, 2006.  Because defendant failed to appear at this hearing, I conditionally granted defendant's counsel's motion and I issued an Order to Show Cause.  Defendant was ordered to appear personally before the court on January 23, 2006 to show cause why his answer should not be stricken and his default entered for his failure to respond to plaintiff's discovery and otherwise assist his counsel in the defense of this action.  Defendant failed to appear or otherwise respond at the Order to Show Cause hearing on January 23, 2006.  Defendant's counsel informed the court of defendant's eviction from his business, the Avenue Club, and counsel's repeated unsuccessful efforts to contact defendant.  The court set a Further Order to Show Cause hearing for February 13, 2006, to allow defendant's counsel to prepare a skip trace in order to obtain the defendant's current address.  Defendant again failed to appear at the further Order to Show Cause hearing on February 13, 2006.

---

[1]   The last day for expert discovery was set for January 6, 2006 in preparation for the trial date of May 1, 2006.

1    Rules 16 and 37 of the Federal Rules of Civil Procedure
2 vest this court with broad discretion to issue sanctions,
3 including terminating sanctions and entry of a default
4 judgment, for a party's failure to comply with court orders
5 and local rules.  Fed. R. Civ. P. 16(f); 37(b)(2)(C); see also
6 Malone v. U.S. Postal Service, 833 F.2d 128, 129-33 (9th Cir.
7 1987)(affirming dismissal under Rule 16 for failure to comply
8 with pretrial order); Stars' Desert Inn Hotel & Country Club,
9 Inc. v. Hwang, 105 F.3d 521 (9th Cir. 1997)(affirming default
10 judgment under Rule 37 for failure to comply with court
11 order).  In addition, Local Rule 1-4 expressly provides that
12 "failure by counsel or a party to comply with any duly
13 promulgated local rule or any Federal Rule may be a ground for
14 imposition of any authorized sanction."  N.D. Cal. Civ. R. 1-
15 4; see Electronics for Imaging, Inc. v. Photoscript Group, No.
16 C-98-2759 (SI), 1999 U.S. Dist. LEXIS 7395, at * 7-8 (N.D.
17 Cal. May 11, 1999).  On February 14, 2006, I ordered
18 defendant's answer stricken and his default entered as an
19 appropriate sanction for his failures to make court
20 appearances, to comply with court orders, and to respond to
21 plaintiff's discovery requests.  Plaintiff now seeks a default
22 judgment, consisting of $110,000 in statutory damages and
23 $9,970 in attorneys' fees and costs.[2]

24    Pursuant to Rule 55(b)(2), the court, in its discretion,
25 may enter a default judgment against a party against whom
26 default has been entered.  Eitel v. McCool, 782 F.2d 1470,

---

[2] Plaintiff initially sought $110,000 in statutory damages and $5,820 in attorneys' fees before filing its amended motion.

4

1471 (9th Cir. 1986). The party entitled to a judgment by default must apply to the court therefor; and when the defaulting party has appeared in the action, as here, it shall be served with written notice of the application for judgment. Fed. R. Civ. P. 55(b)(2). Plaintiff has served notice of its motion to defendant at his last known address.

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2). Plaintiff's counsel states that this requirement is satisfied because defendant "has appeared in the action and has not raised any claim that he is in the military, is incompetent or is a minor" and plaintiff's counsel has performed various public searches which did not indicate that plaintiff is in the military, is incompetent or is a minor. Amended Greenbaum Decl. in Support of Entry of Def. J. ¶¶ 4-5, 7-10.

By his default, defendant is deemed to have admitted the well-pleaded averments of the complaint except those as to amount of damages. See Fed. R. Civ. P. 8(d); DirecTV, Inc. v. Cao, No. S-03-0948 (GEB), 2006 U.S. Dist. LEXIS 2411, at * 5 (C.D. Cal. Jan. 24, 2006)("[t]he dismissal of the answer and entry of default effects an admission of all well-pleaded allegations of the complaint by the defaulted party" (citing Geddes v. United Financial Group, 559 F.2d 557 (9th Cir. 1977)). Having reviewed plaintiff's complaint, I find that the allegations are sufficiently well-pled to establish defendant's liability under both 47 U.S.C. §§ 553 and 605. Plaintiff alleges that it paid substantial fees to enter into

an exclusive license agreement "for the purpose of distributing for a commercial gain the closed-circuit broadcast of the Ruiz v. Jones boxing match, including undercard or preliminary bouts ('the Event') to various business establishments throughout California." Compl. ¶¶ 6-7. Plaintiff alleges that "[t]he closed-circuit broadcast of the Event could only be exhibited in a commercial establishment if said establishment was contractually authorized to do so by Plaintiff" and had paid a fee in exchange for the right to broadcast the Event. Id. ¶ 8-9. The transmission of the Event was "electronically coded or 'scrambled' . . . [and] had to be decoded with electronic decoding equipment" in order for the signal to be received and telecast clearly. Id. ¶ 10. Defendant is alleged to have "enabled his patrons within the commercial establishment, Avenue Club, to view the Event" without contracting with plaintiff or paying the appropriate fee. Id. ¶¶ 13-17. In addition, plaintiff claims that defendant willfully violated, or willfully assisted in violating, both 47 U.S.C. §§ 553 and 605. Id. ¶ 13. Despite the fact that defendant has denied all of these allegations in his answer, due to his default, all well-pled allegations in the complaint are now established and defendant has admitted liability.

Liability having been established on default, the only issue that remains is the appropriate relief to be awarded. Plaintiff seeks maximum statutory damages under both 47 U.S.C. §§ 553 and 605 for defendant's unlawful interception and misappropriation of a closed-circuit broadcast of a

1  championship boxing match in a commercial establishment
2  without obtaining a commercial license.  Pl.'s Motion for Def.
3  J. ¶ 1.  Both sections 553 and 605 of Title 47 prohibit the
4  unauthorized interception and reception of cable programming.
5  Both sections also allow a plaintiff to elect recovery of
6  actual or statutory damages.  Section 553(c)(3)(A)(ii)
7  provides statutory damages of $250 to $10,000 for "all
8  violations" while section 605(e)(3)(C)(i)(II) authorizes
9  statutory damages of $1,000 to $10,000 for "each violation."
10       Section 605(e)(3)(C)(ii) vests the court with the
11  discretion to increase the award of damages, whether actual or
12  statutory, where "the court finds that the violation was
13  committed willfully and for the purposes of direct or indirect
14  commercial advantage or private financial gain."  The court is
15  authorized to award enhanced damages up to $100,000.  Section
16  553(c)(3)(B) permits an award of enhanced damages of up to
17  $50,000 for willful conduct for the purpose of commercial
18  advantage or private financial gain.
19       Plaintiff alleges defendant's violations were willfully
20  committed for financial gain and therefore seeks enhanced
21  damages of $50,000.  Plaintiff urges this large award is
22  merited since, due to the "scrambling" of the signal,
23  defendant "could not have obtained the transmission of the
24  Event had [d]efendant not undertaken specific wrongful actions
25  to intercept and/or receive and broadcast the telecast."
26  Pl.'s Memo. in Supp. of Req. for Entry of Def. J. 12:4-7.
27       This court has followed the lead of the Second Circuit
28  which has determined that where liability exists under both §§

7

1 553 and 605, the court should impose damages pursuant to § 605
2 instead of imposing the lesser damages available under § 553.
3 See International Cablevision, Inc. v. Sykes, 997 F.2d 998,
4 1009 (2nd Cir. 1993), aff'd 75 F.3d 123, 129 (1996); accord
5 Joe Hand Promotions, Inc. v. Pete, No. C-99-0531 (VRW) 1999 WL
6 638215, at *1 (N.D. Cal. Aug. 17, 1999); Kingvision Pay-Per-
7 View, Ltd. v. Ortega, No. C-02-2716 (SI) 2002 WL 31855367, at
8 *2 (N.D. Cal. Dec. 16, 2002)("[i]n cases in which plaintiffs
9 have proven violations under both § 605 and § 553 courts in
10 this district have declined to award cumulative damages"); Joe
11 Hand Promotions, Inc. v. Dailey, No. C-01-4219 (CRB) 2003 WL
12 1342998, at *2 (N.D. Cal. Mar. 13, 2003).
13     The court will therefore opt for granting the higher
14 damages under § 605 but refrain from granting the maximum
15 requested.  In a case very similar to this one, involving the
16 same plaintiff, this court awarded the statutory minimum under
17 § 605, declining plaintiff's request for the statutory maximum
18 plus enhanced damages for willfulness.  Kingvision, 2002 WL
19 31855367, at *2 (awarding $1,000 plus attorney's fees and
20 costs in default judgment).  In Kingvision, the defendant was
21 found to have violated §§ 605 and 553 by intercepting and
22 displaying a boxing match in its restaurant without a license.
23 Id.  Despite plaintiff's assertions that defendant acted
24 willfully, the court awarded minimum statutory damages because
25 there was "no evidence that the violation occurred multiple
26 times, that the establishment intended to directly profit from
27 the violation or that it actually profited from the
28 violation."  Id.  The court noted that "[c]ourts in this

district have considered several cases involving pirating of closed-circuit sports broadcasts and, absent a showing of egregious wrongdoing, generally have awarded damages slightly over the statutory minimum." Id. (citing Universal Sports Network v. Jimenez, No. C-02-2768 (SC) 2002 WL 31109707, at *1 (N.D. Cal. Sept. 18, 2002)).

In the instant case, plaintiff presented neither evidence of prior violations nor evidence that plaintiff intended to, or actually did, profit directly from the violation. In fact, in his declaration in support of his motion to set aside his default and in his case management statement, defendant asserted that he had permission to broadcast the match from a satellite company and had paid the requested fee. Plaintiff has not established that defendant either advertised for the Event or used it to attract customers. Since defendant has been evicted from his business, there is little value in assessing enhanced damages as a deterrent. However, to avoid creating a financial incentive for an establishment to violate the relevant statutes because the licensing fees outweigh the damages assessed against the violator if caught, I find it reasonable to award the plaintiff more than the statutory minimum. Some courts in cases similar to this one have calculated damages by applying a multiplier to the costs of obtaining a license to broadcast the event legally. Cablevision Systems New York City Corporation v. Rosa, No. 01 Civ. 4822 (GEL) 2002 WL 1446942, at * 3 (S.D.N.Y. Apr. 3, 2002)("Perhaps the most common method is to calculate the value of the services which were stolen and apply a multiplier

to that sum."). Multipliers of two or three times the costs of obtaining permission legally seem reasonable and would adequately deter future violations. <u>Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec Y Caridad, Inc.</u>, No. 01 Civ. 6562 (SHS) 2001 WL 1586667, at * 2 (S.D.N.Y. Dec. 12, 2001)(applying a multiplier of two for a damages award of $2,000 and an enhancement of $1,000); <u>Echostar Technologies Corp. v. Starczewski</u>, No. CV-04-2010 (DGT) 2006 WL 1307984, at * 3-4 (E.D.N.Y. May 10, 2006)(applying a multiplier of two). See also <u>Kingvision Pay-Per-View, Ltd. v. Rodriquez</u>, No. 02 Civ. 7972 (SHS) 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)(awarding a statutory minimum of $1,000 and enhancement of $1,000 because there was no proof that defendants advertised, pirated other events or charged a cover or a premium on food or drinks). Since plaintiff alleges that it would have requested from the defendant a sublicense fee of approximately $1,200 to $2,400 in order to authorize it to broadcast the Event, plaintiff is entitled to an award of $3,000 in damages, which includes a multiplier of two to three times the fee plaintiff would have received had defendant acted lawfully. Pl.'s Memo. in Supp. of Req. for Entry of Def. J. 15:2-3.

Finally, plaintiff requests $9,970 in attorneys' fees. Section 605 provides that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. §605(e)(3)(B)(iii). Plaintiff has submitted the declaration of its counsel, Martin Greenbaum, in support of its request,

10

which details Mr. Greenbaum's qualifications and the time he and others spent on this case.  Most of the time spent revolved around propounding discovery and addressing defendant's failure to appear, communicate with his attorney and defend this action.  Plaintiff has adequately supported its fees and established that its attorneys' fees were reasonable and necessary for plaintiff to obtain a default judgment against a defendant who started defending himself only to cease participating midway through this action. Plaintiff's counsel, however, seems to have billed twice for a court appearance on August 8, 2005.  Decl. in Supp. of Req. for Attys' Fees, Ex. C-2.  Absent any explanation for this double billing, I will deduct $225 from plaintiff's requested amount of $9,970, awarding plaintiff $9,745 in attorneys' fees.

For the reasons outlined above, **IT IS HEREBY ORDERED** that the motion for default judgment against defendant is **GRANTED**, and plaintiff is entitled to $3,000 in statutory damages and $9,745 in attorneys' fees.  Because I see no need for a hearing on this matter, **IT IS FURTHER ORDERED** that the hearing scheduled for June 7, 2006 is **VACATED**.

Dated: June 6, 2006

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\KINGVISION\DEF.JUDG.ORD.wpd